## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MARK WILLIAMSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 20-CV-418-SPS |
| | ) | |
| KOOL KAR AUTOMOTIVE, LLC, | ) | |
| an Oklahoma Limited Liability | ) | |
| Company, | ) | |
| | ) | |
| Defendant. | ) | |

### COMPLAINT

Plaintiff, Mark Williamson ("Williamson"), brings this action against Kool Kar Automotive, LLC, Kool Kar Sales, L.L.C., and Gary Dunlap ("Dunlap"). In support, Williamson states the following:

### PARTIES

1.     Williamson is a resident of Bryan County, State of Oklahoma.

2.     On information and belief, Kool Kar Automotive, LLC, is an Oklahoma limited liability company with its principal place of business in Bryan County, State of Oklahoma.

3.     On information and belief, Kool Kar Sales, L.L.C., is an Oklahoma limited liability company with its principal place of business in Bryan County, State of Oklahoma.

4.     Kool Kar Automotive, LLC, and Kool Kar Sales, L.L.C. (collectively "Kool Kar") had common ownership, management, and operations and Williamson worked for both entities as joint employers.

5.      On information and belief, Dunlap is a resident of Grayson County, State of Texas, and he regularly conducts business in Bryan County, State of Oklahoma.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367.

7.      Venue is proper under 28 U.S.C.A. § 1391 (b) and (c) because Kool Kar and Dunlap caused events to occur in the Eastern District of Oklahoma in Bryan County, out of which Williamson's claims arise.

## FACTS APPLICABLE TO ALL CLAIMS

8.      From February 2018 to September 2020, Williamson worked at Kool Kar as a mechanic and tow-truck operator/wrecker and performed his job duties and responsibilities in at least a satisfactory manner.

9.      At all relevant times, Kool Kar was an employer as defined in the Fair Labor Standards Act ("FLSA").

10.     At all relevant times, Williamson was a covered employee under the FLSA.

11.     On information and belief, Kool Kar was involved in commerce with annual gross sales or business volume of at least $500,000.00.

12.     Additionally, Williamson was involved in interstate commerce, as he regularly crossed state lines into Texas to perform tow-truck operator/wrecker services.

13.     In Williamson's position as a mechanic and tow-truck operator/wrecker with Kool Kar, Williamson performed the following routine duties: maintenance and repair on dealership vehicles, GPS installation on dealership vehicles, maintenance and repair on

outside customer vehicles, tow-truck operator/wrecker services, repossession on dealership vehicles, repossession for outside customers, and impounding vehicles for city, state and county governments.

14.     From February 2018 to September 2020, Williamson consistently worked about 80 hours per week.

15.     Despite working significant overtime, Kool Kar never paid Williamson any compensation beyond 40 hours per week.

16.     Williamson spoke to Dunlap, Kool Kar's managing member, several times about Kool Kar's failure to properly compensate Williamson for all hours worked.

17.     Dunlap repeatedly assured Williamson that the issue would be corrected in time, but Williamson was never properly compensated.

18.     Throughout the above-described events, Kool Kar knew that its conduct was prohibited by the FLSA or showed reckless disregard as to whether its conduct was prohibited by the FLSA.

19.     Williamson lost his fiancé and girlfriend of eight years because he was working all the time.

20.     After consistently complaining of his improper compensation for over two years—to no avail, Williamson resigned his position at Kool Kar in September 2020 to take a position with Keel's Recovery in Van Alstyne, Texas.

21.     About three weeks after Williamson began working with Keel's Recovery, Williamson received a call from a friend, who had been instrumental in Williamson's receiving the job at Keel's Recovery.

22.     The friend asked Williamson whether he intended to use the tow truck provided by Keel's Recovery to moonlight and perform tow-truck operator/wrecker services for his own clients.

23.     Williamson responded that he did not intend to use the tow truck to moonlight and asked why he was being questioned about this.

24.     The friend said that these questions were coming from the owner of Keel's Recovery and that he was unaware of why the owner was asking these questions.

25.     Williamson asked the friend whether he should reach out to the owner to talk about this, but the friend said that he did not believe this was necessary and not to worry about it.

26.     The day after Williamson's conversation with the friend, someone from Keel's Recovery came and picked up Williamson's assigned tow truck, saying that they were taking the tow truck in for some body work.

27.     Williamson did not initially believe that there was anything strange about his tow truck's being picked up because the truck had been in a collision shortly before he was hired by Keel's Recovery, and he had been told that the truck would receive some body work in the near future.

28.     Some time passed, and Williamson began to question when his tow truck would be returned to him so he could resume his job duties.

29.     About two weeks after his truck had been taken, he had a conversation with the owner of Keel's Recovery about when his tow truck would be returned. The owner told Williamson that if Williamson had any available job opportunities, he should probably take

them.

30.     Around this time, Williamson heard a rumor that he had been fired.

31.     Williamson has never been able to resume employment at Keel's Recovery.

32.     Williamson has reason to believe that Dunlap, the managing member of Kool Kar, made false and malicious statements about Williamson's moonlighting at Kool Kar and using Kool Kar's tow truck for his own clients.

33.     Williamson further has reason to believe that Dunlap made the above statements with the intent to interfere with Williamson's employment relationship with Keel's Recovery

34.     Finally, Williamson has reason to believe that the owner of Keel's Recovery terminated Williamson because of these false and malicious statements made by Dunlap.

<u>**FIRST CAUSE OF ACTION—FAILURE TO PAY
WAGES UNDER FLSA (AGAINST KOOL CAR)**</u>

35.     Williamson incorporates the above allegations by reference.

36.     At all relevant times, Williamson was a covered, nonexempt, employee under the FLSA.

37.     At all relevant times, Kool Kar was an employer under the FLSA.

38.     From February 2018 to September 2020, Williamson worked well in excess of 40 hours per week.

39.     Kool Kar willfully refused to compensate Williamson for any time that he worked in excess of 40 hours per week.

40.     Kool Kar's actions were performed with malice or reckless indifference to

Williamson's federally protected rights.

Accordingly, Williamson demands judgment against Kool Kar as follows:

(1) for actual and liquidated damages in excess of $75,000;

(2) for interest, both pre- and post-judgment;

(3) for a reasonable attorney's fee and costs as provided for under 29 U.S.C.
    § 216 (b); and

(4) for any further relief the Court deems just and proper.

### SECOND CAUSE OF ACTION—INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE (AGAINST KOOL CAR AND DUNLAP)

41.     Williamson incorporates the above allegations by reference.

42.     Williamson had a valid business relationship or expectancy as a result of his employment relationship with Keel's Recovery.

43.     On information and belief, Dunlap knew of Williamson's relationship or expectancy with Keel's Recovery.

44.     On information and belief, Dunlap, acting on behalf of Kool Kar, interfered with Williamson's relationship or expectancy with Keel's Recovery by making false and malicious statements to the owner of Keel's Recovery, stating that Williamson had used his assigned tow truck at Kool Kar to moonlight and perform tow-truck/wrecker services for Williamson's own clients.

45.     On information and belief, the owner of Keel's Recovery terminated Williamson because of the false and malicious statements made by Dunlap.

46.     Williamson lost wages as a result of his termination and thus was damaged.

Accordingly, Williamson demands judgment against Kool Kar and Dunlap as follows:

(1) for economic and noneconomic damages in excess of $75,000;

(2) for punitive and exemplary damages;

(3) for interest, both pre- and post-judgment;

(4) for a reasonable attorney's fee and costs; and

(5) for any further relief the Court deems just and proper.

Respectfully submitted,

s/Jonathan M. Irwin
Woodrow K. Glass, OBA#15690
Jonathan M. Irwin, OBA#32636
1601 36th Avenue N.W., Suite 100
Norman, Oklahoma  73072
(405) 360-9700 / (405) 360-7902 fax
**ATTORNEYS FOR PLAINTIFF**

**ATTORNEY LIEN CLAIMED**
**JURY TRIAL DEMANDED**